STEWART, J.
|, Phillip Vernon (“Vernon”) and the City of Bossier City are both appealing a trial court judgment affirming Bossier City’s Municipal Fire and Police Civil Service Board’s (“Board”) February 16, 2010, decision regarding Phillip Vernon’s termination by Bossier City. For the reasons discussed below, we affirm.
FACTS
On October 3, 2009, Vernon, while employed as a permanent police officer at the Bossier City Police Department (“BCPD”), was involved in the arrest of Sherburne Sentell at the Horseshoe Casino in Bossier City, stemming from a domestic dispute between Sentell and his wife, Julianna. This dispute was recorded by the casino surveillance cameras. The recording showed an allegedly intoxicated Sentell restraining his wife. At the time of his arrest, Sentell was an assistant district attorney for Webster Parish. Although he was not the arresting officer, Vernon was responsible for transporting Sentell from the Horseshoe Casino to the Bossier City Jail.
Corporal Murray Wells, the arresting officer, charged Sentell with domestic battery. Upon arriving at the jail, Vernon informed Wells that Sentell made threats in the patrol car. Wells filed an incident report regarding Sentell’s domestic battery charge, while Vernon filed a supplemental report that warranted an additional charge of public intimidation. Based on Vernon’s representations, Sentell was charged with public intimidation.
In the supplemental report, Vernon stated that Sentell made threats that police officers were going to lose their jobs over his arrest, while en 12route to the Bossier Parish Jail. However, the video obtained from Vernon’s patrol car failed to show that Sentell threatened Vernon’s, or any other officer’s, job. Based on the conflict between Vernon’s report and the video evidence, an internal affairs complaint was filed against him. He was subsequently interviewed in connection with the investigation. During this interview, Vernon stated that Sentell made the remark “that people were going to lose jobs over this incident.”
Vernon was then asked to view the video obtained from his patrol car. When the video revealed that Sentell did not make any comments threatening officers’ jobs, Larry Stockton, the interviewing officer, stated that Vernon started sweating profusely and seemed nervous. Vernon then admitted that the video did not show Sen-tell making threatening remarks regarding officers’ jobs.
The internal affairs complaint was sustained, and Vernon was found to be in violation of La. R.S. 33:2500 and the BCPD’s Code of Conduct regarding false statements and malicious prosecution. The BCPD Code of Conduct states in pertinent part:
Section 15: Paragraph A — No employee shall willfully misrepresent any matter, sign any false statement or report, perjure himself/herself, or give false testimony before any court, Grand Jury, Board, commission, official hearing, departmental hearing, or internal investigation.
Section 19: Paragraph C — No employee shall direct any malicious prosecution against any person.
On November 19, 2009, Vernon received written notice of his termination from the BCPD based on these violations. He appealed the decision to the Board, and an evidentiary hearing was held on February 3 Rand 4, 2010. Vernon argued that Sen-tell’s claims must have been made off-camera, and the report claiming that the *156 incident occurred “en route” was technically true. In the Board’s Written Finding of Fact and Decision, it rejected Vernon’s argument, but determined no malicious prosecution was intended in Vernon’s actions. Although it found that the BCPD acted in good faith and with just cause, it determined the punishment too severe, and modified it to a 90-day suspension without pay.
Bossier City and Vernon appealed the Board’s decision to the 26th Judicial District Court in Bossier Parish. Bossier City challenged the Board’s decision to reduce Vernon’s punishment from termination to a 90-day suspension without pay. Vernon argued in his appeal that he was a victim of a “conspiracy” by Bossier City to terminate his employment. He further argued that the Board allowed Cecil Campbell, its legal advisor and Sentell’s colleague and friend, to preside as judge. Vernon also alleged that the Board spoiled the evidence because the transcript from the hearings was incomplete.
The district court found both parties’ appeals meritless, and affirmed the judgment of the Board. Both parties appealed.
STANDARD OF REVIEW
An employee under classified service may appeal from any decision of the civil service board that is prejudicial to him. La. R.S. 33:2501(E)(1). Such an appeal shall be taken to the district court wherein the civil service board is domiciled. Id. Review by the district court does not include a trial de novo. McCoy v. City of Shreveport, 42,662 (La.App. 2 Cir. 12/05/07), 972 So.2d 1178; Walsworth v. Municipal Fire & Police Civil Service Bd. of City of Shreveport, 567 So.2d 712 (La. App. 2 Cir.1990). Rather, the district court sits as a reviewing court and determines from the record of the Board’s proceedings whether its decision was made in good faith for cause. McCoy supra; Walsworth supra. The hearing “shall be confined to the determination of whether the decision made by the board was made in good faith for cause” and “[n]o appeal shall be taken except upon these grounds.” La. R.S. 33:2501(E)(3). The Board’s decision will not be overturned unless it is manifestly erroneous or arbitrary and capricious. McCoy, supra.
If made in good faith and for statutory cause, a decision of the civil service board cannot be disturbed on judicial review. Lee v. City of West Monroe, 39,-611 (La.App. 2 Cir. 5/11/05), 902 So.2d 1202; McDonald v. City of Shreveport, 26,877 (La.App. 2 Cir. 5/10/95), 655 So.2d 588. Good faith does not occur if the appointing authority acts arbitrarily or capriciously, or as a result of prejudice or political expediency. Moore v. Ware, 2001-3341 (La.2/25/03), 839 So.2d 940. Arbitrary or capricious behavior means without a rational basis for the action taken. Id.
The district court may not substitute its opinion for that of the board. The district court should accord deference to a civil service board’s factual conclusions and must not overturn them unless they are manifestly erroneous. Moore, supra. Likewise, the intermediate appellate court’s review of a civil service board’s findings of fact is limited. Id. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. Id.
1 .ANALYSIS

Vernon’s Appeal

Vernon cites four assignments of error in his appeal. In the first assignment, he asserts that the district court and the Board erred in failing to consider *157 whether it was prejudicial for retired Judge Cecil Campbell to preside as “judge” of the Board hearing, while also serving as legal advisor to the Board.
Vernon asserts that Judge Campbell im-permissibly served as a “judge” of the Board hearing, making it impossible for him to receive a fair and impartial process due to him by law. He argues that Judge Campbell’s claim that he did not officiate in any capacity is untrue, since the transcript reveals multiple instances in which he impermissibly made rulings on issues of law, fact, and evidence. As a result, Vernon contends that the Board intentionally failed to give him a fair hearing.
In the absence of an express reservation, the silence of the trial court on an issue raised by the pleadings and on which evidence was offered is to be taken as a rejection of that demand. Anthony’s Auto Sales, Inc. v. Shephard, 600 So.2d 125 (La.App. 2 Cir.1992). Silence on an issue raised in the trial court is considered a rejection of that claim. Mitchell Co. v. Mucavil, Inc., 02-381 (La.App. 3 Cir. 10/1/03), 855 So.2d 426. Since the district court did not address Vernon’s claim regarding a conflict of interest with Campbell, it is deemed rejected.
After reviewing the transcript from the Board hearing, we find that Campbell’s participation in the hearing did not prove prejudice in any |fimanner. Moreover, Vernon failed to specify a reasonable basis for his allegation of prejudice. The trial judge did not err in rejecting this issue. This assignment of error is without merit.
In Vernon’s second assignment of error, he contends that the district court erred in concluding as a matter of fact that he claimed that Sentell’s threats were recorded in his car, and that his supplemental report contradicted his claim that Sen-tell threatened the officers’ jobs. Vernon contends that the Board and Bossier City did not provide any evidence proving that his supplemental report contained a false statement. Vernon argues that Bossier City misinterpreted the phrase “en route to the jail” contained in the supplemental report to mean “the threats were recorded in the patrol car.”
We cannot agree with Vernon’s assertion that his supplemental report did not contain a false statement. It is clear that his supplemental report meant that Sen-tell’s threats were made in the patrol car, when Vernon noted that his observations occurred “while en route to the jail.” All of Vernon’s observations in the supplemental report are stated prior to when he noted their arrival the Bossier Parish Jail. Further, had Sentell been issuing threats to have the officers fired while en route to the jail, those threats would have been captured by the video recorded in Vernon’s patrol car.
After reviewing Vernon’s supplemental report, the transcripts from the internal affairs interview, and the testimonies of Vernon and Wells, we conclude 17that there was a reasonable basis for the district court to conclude that the report meant that the alleged threats were made in the police vehicle. This assignment of error is meritless.
In Vernon’s third assignment of error, he argues that Bossier City acted in bad faith in violating his rights as set forth in the Police Officer’s Bill of Rights by failing to record all of his interrogations with internal affairs and failing to apprise him of the nature of the investigation against him. He further argues that the district court erred in concluding that the Board’s actions against him were not arbitrary and capricious.
The records shows that the Board did not decide any claim by Vernon regarding *158 a violation of the Louisiana Police Officers’ Bill of Rights. Further, Vernon did not raise this alleged violation before the district court.
As discussed above in the standard of review portion of this opinion, review by the district court does not include a trial de novo. McCoy, supra. Rather, the district court sits as a reviewing court and determines from the record of the Board’s proceedings whether its decision was made in good faith for cause. Id. Likewise, this court’s review of a civil service board’s findings of fact is limited. Moore, supra,.
This issue was not properly brought before the district court, nor was it properly brought before this court. This assignment is without merit.
Finally, in the fourth assignment of error, Vernon contends that the district court erred in finding that the Board’s actions in the submission of the recordings of the civil service hearings to the district court did not constitute the “spoliation [sic] of evidence.” Vernon alleges that the ^recordings had been altered and spliced together, and that numerous parts of the recordings were missing.
Vernon argues that the district court erroneously concluded that the Board did not have a duty to ensure a complete and accurate transcript of the proceedings. He asserts that the Board, as initial custodian and keeper of the recordings, had a duty not to spoil the evidence, since it was foreseeable that this evidence needed to be preserved due to the nature of the case.
La. R.S. 33:2501(B)(3) states:
The Board shall have complete charge of any such hearing and investigation, and may conduct it in any manner it deems advisable, without prejudice to any person or party thereto. The procedure followed shall be informal and not necessarily bound by the legalistic rules of evidence. The board shall not be required, to have the testimony taken and transcribed\ but either the employee or the appointing authority may, at their own expense, make the necessary arrangements therefor. In such cases, the board may name any competent shorthand reporter as the official reporter. If the testimony is not taken or transcribed, then the board shall make a written finding of fact. (Emphasis added.)
Pursuant to this statute, it was Vernon’s duty to make the necessary arrangements to have the testimony taken or transcribed, at his expense, if he wanted to preserve a permanent transcript of the Board’s proceeding. The district court correctly concluded that the Board was not under any obligation to preserve or prepare a transcript of the proceeding on Vernon’s behalf. This assignment is without merit.

Bossier City’s Appeal

Bossier City cites two assignments error in its appeal. In its first assignment of error, Bossier City asserts that the district court erred in ^holding that the Board’s decision to modify Vernon’s discipline was consistent with the principles that dictate when, and in what manner, such a modification may occur. In its second assignment of error, Bossier City argues that the district court erred in concluding that the Board’s decision to modify the discipline previously imposed by the city did not constitute an impermissible substitution of judgment by the Board. Since these two assignments relate to the Board’s decision to modify the discipline imposed by the City of Bossier, we will discuss them together.
La. R.S. 33:2501(0(1) states:
*159 C.(l) After the investigation provided for in Subsection B of this Section, the board may, if the evidence is conclusive, affirm the action of the appointing authority. If the board finds that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge or other disciplinary action by directing a suspension without pay, for a given period, a reduction, in pay to the rate prevailing for the next lower class, a reduction or demotion to a position of any lower class and to the rate of pay prevailing thereof, or such other lesser punitive action that may be appropriate under the circumstances. (Emphasis added.)
Pursuant to this statute, the Board had the authority and discretion to modify Vernon’s discipline, if the modification was deemed appropriate. The Board may modify the discipline by “directing a suspension without pay, for a given period.” La. R.S. 33:2501(0(1); Hardison v. Natchitoches Mun. Fire & Police Civil Service Board, 614 So.2d 354 (La.App. 3 Cir.1993). In this instance, the Board determined that the City’s punishment of | ^termination was too severe, and modified it to a 90-day suspension without pay. We agree with the trial court’s determination that the Board’s modification was a permissible substitution of judgment pursuant to La. R.S. 33:2501(0(1). The City’s two assignments of error are without merit.
CONCLUSION
The district court’s ruling that upheld the civil service board’s decision is affirmed. Each party is to bear its own costs for these appeals.
AFFIRMED.