# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-1227


**STEPHAN JONES**

**VERSUS**

**CITY OF PINEVILLE**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 220,225
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.


**REVERSED AND RENDERED.**

**Daniel Elmo Broussard, Jr.**
**Broussard, Halcomb & Vizzier**
**P. O. Box 1311**
**Alexandria, LA 71309**
**(318) 487-4589**
**Counsel for Plaintiff/Appellant:**
**Stephan Jones**

**Mark Felipe Vilar**
**Vilar & Elliott**
**P. O. Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**Counsel for Defendant/Appellee:**
**City of Pineville**

**SAUNDERS, Judge.**

This is a civil service case where a firefighter was terminated for insubordination by a municipality. The insubordinate act was that the firefighter failed to give a valid urine sample at the designated facility for a drug screen after having been ordered by his superior to do so. The drug screen was required by the city's standard operating procedure, as the firefighter was involved in a minor vehicle accident while on duty.

The firefighter appealed his termination to the civil service board. The board upheld his termination. The firefighter then appealed the board's decision to the appropriate district court. The district court affirmed the board's decision. The firefighter has now appealed to this court, alleging several assignments of error.

We reverse the district court's affirmation of the board's decision. We find that the firefighter's termination was not in good faith and was unreasonable, as the municipality failed to prove that it performed its affirmative duty to give the firefighter written notice of his termination and the reasons for that termination as required by La.R.S. 33:2500(D). We order that the firefighter be reinstated to his former position and that the firefighter be paid back pay from the time of his illegal termination.

**FACTS AND PROCEDURAL HISTORY:**

On July 23, 2003, Stephan Jones (Jones) was employed by the Pineville Fire Department. On that date he was on duty and driving a fire truck owned by the City of Pineville (Pineville). Jones had been employed by Pineville for approximately three years holding the rank of Firefighter First Class with no prior disciplinary action taken against him. While driving the fire truck back to the fire station, Jones was involved in a minor accident with a United Stated Postal Service truck, wherein he,

while attempting to pass the postal truck, struck the truck's side mirror. Jones was driving without a valid driver's license in his possession when the accident occurred.

Before leaving the accident scene, pursuant to Pineville's substance abuse policy, Jones was ordered by Chief Doug Nugent to report to the Rapides Regional Medical Center's Industrial Medicine Clinic to provide a urine sample for a drug screen. Captain Eddie Laborde was instructed to transport Jones to the facility.

Upon leaving the accident scene, Jones requested that Captain Laborde bring him to the fire station so that he could retrieve his driver's license. While at the station, Jones collected items from the saddlebag of his motorcycle, had a glass of water, and used the restroom. Captain Laborde then took Jones to the facility to provide the urine sample.

At the facility, Jones was given a urine cup and was instructed to go into the restroom by the attending nurse, Dianne McClellan. When Jones returned with the sample, Nurse McClellan tested it to determine whether the sample was within the temperature range necessary to be susceptible to a valid drug screen. According to McClellan, the temperature strip indicated that the sample's temperature was too high to be tested, and she informed Jones that he would need to submit another sample. At this point, Jones apparently became irate with Nurse McClellan and refused to submit another sample. Jones then left the facility to await Captain Laborde's return. Meanwhile, Nurse McClellan called Diane Ray, Pineville's Human Resource Director, and informed Ray of Jones' failure to submit a valid urine sample.

Chief Nugent instructed Captain Laborde to return to the facility and retrieve Jones. When Captain Laborde arrived, Jones got into the vehicle and informed Captain Laborde that the urine sample was determined to be invalid. Captain

2

Laborde then told Jones that failure to submit a valid sample could cost him his job. Captain Laborde then returned Jones to the facility to see if Jones could submit a second sample.

Once inside, Captain Laborde called Chief Gary Morrow. Chief Morrow told Captain Laborde to transport Jones back to administration. After Captain Laborde and Jones returned to the fire department, a meeting took place between Chief Nugent, Chief Morrow, and Captain Laborde while Jones waited outside. Chief Morrow then informed Jones that he had the option of resigning or being placed on suspension without pay. Jones refused to resign and was sent home on immediate suspension.

On July 24, 2003, Chief Morrow sent a letter to Jones informing him that an internal affairs investigation was being conducted and that Jones needed to report to Lieutenant Dan Rachal of the Pineville Police Department. Jones gave a recorded statement before Lieutenant Rachal and Acting Chief Barry Tull. On July 31, 2003, Chief Morrow delivered a letter to Jones entitled "Predisciplinary Hearing - Notice of Charges." This letter notified Jones that a pre-disciplinary hearing would take place on August 4, 2003.

Following the August 4, 2003, pre-disciplinary hearing, Jones was terminated. Jones appealed his termination to the Pineville Civil Service Board (the Board). A hearing was held in front of the Board on October 15, 2003, and was continued on February 9, 2003, March 17, 2005, and April 13, 2005. The Board rendered its decision on April 13, 2005, to unanimously uphold Jones' termination. Jones then properly appealed the Board's decision to the Ninth Judicial District Court raising several issues that he alleged made his termination improper. One of the issues Jones

3

raised to the district court was that he had never received proper written notification of his termination or the reasons for that termination from the appropriate appointing authority, the mayor of Pineville, Mayor Clarence Fields. This was the first time that Jones raised this issue. The district court affirmed the Board's decision to uphold Pineville's termination of Jones, finding that the termination was in good faith and was reasonable. Jones then timely perfected this appeal, alleging the following assignments of error:

**ASSIGNMENTS OF ERROR:**

1. Jones' termination was not proper, as no written notification of such or reasons for that termination was given to him by the appointing authority, the Mayor of Pineville, in compliance with La.R.S. 33:2500(D).

2. The Board violated Jones' constitutional rights to procedural due process and to a fair notice and meaningful opportunity to be heard, in specific, by limiting the presentation of evidence on behalf of Jones at the partially conducted hearing and failing to address any issues to Jones's deficient notice.

3. At the first hearing, the only witness (who was allowed to testify again over objection) acknowledged the failure of the city to follow rules on drug testing, thereby calling for the granting of Jones' motion to have that issue dismissed from appeal (which motion was denied and is appealed herein), and yet the Board decided to still consider those issues although the City failed to comply with drug testing policies, which rises to the level of state constitutional issues regarding unlawful searches and seizures, thereby divesting the Civil Service Board of jurisdiction of such issues and violating the equal protection laws of Jones and likewise the Standard Operation Procedure regarding Jones' action to a nurse at the time of the test is constitutionally protected speech and further the SOP is unconstitutionally vague and over broad, and thus the Board has no jurisdiction to determine that matter.

4. Relatedly, the issues related to drug testing involve the lack of proper involvement of a MRO as required by law and other violations regarding the collection and charting of events related to this case, including the incompetency and impeachment of the nurse collection site person who was on duty at Rapides General Hospital.

5. At the hearing, the Board attempted to limit the cross-examination of witnesses called by the City of Pineville in a most egregious, clear and unfair manner and constituting gross departure from proper conduct of hearings even where formal rules of evidence need not be followed.

4

6.  The untimely investigation and improper pre-disciplinary hearing falls outside of statutory law and has prejudiced Jones over the significant amount of time between the initial hearing and conduct of the hearing now.

7.  The Board improperly considered objected to evidence and also impermissibly expanded the punishment to include items never noticed by *Loudermill* requirements.

8.  The Board did not consider that the only positive testimony on the issue of failure to follow a direct order resulting in clear testimony of same did not occur.

9.  The Board's punishment was too severe and the City failed to prove that any action of Jones impaired the efficient operation of the City based on other's similar situations for which no punishment was meted out and considering the unconstitutionality and protected behavior with which Jones acted in disagreeing with Nurse McClellan.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Jones contends in his first of many assignments of error that the district court erred in affirming the Board's decision, as the Board did not consider that Pineville failed to comply with La.R.S. 33:2500(D) when it terminated his employment. We find that Jones' contention has merit.

Pineville first argues that Jones' failure to raise this issue before the Board is a waiver of this assignment of error. We do not agree.

Our supreme court, in *Shields v. City of Shreveport*, 579 So.2d 961 (La.1991), addressed an issue raised for the first time in memorandum to the district court dealing with the federal Rehabilitation Act. Our supreme court acknowledged that the issue in *Shields* was outside the proper scope of review, as La.R.S. 33:2501(E)(3) limits the scope of review of an appeal from a civil service board's decision as to whether the decision was in good faith and reasonable. Nonetheless, prior to addressing the issue, our supreme court stated the following:

> The issue raised by plaintiffs' contention that the Rehabilitation Act operates to prevent their termination would ordinarily not be

5

considered by us because, as explained above, it was never properly before any reviewing court and plaintiffs failed to allege and prove a threshold requirement of the statute. However, the issue has been briefed and argued by counsel and, in the interest of judicial economy, we deem it important to address the question.

*Id.*, at 965.

As in the *Shields* case, the issue before us was not raised by Jones until his memorandum to the district court. However, unlike *Shields*, this issue is squarely within our scope of review, as this issue deals with whether Pineville, through Mayor Fields, successfully carried its burden to prove to the Board that Jones' dismissal was in good faith and was reasonable. Further, identically to *Shields*, this issue has been briefed and argued by counsel at the district court and appellate court levels, and addressing it would be in the interest of judicial economy. Finally, like our supreme court in *Shields*, we feel that this issue is one of importance. Jones is a civil service employee, and, as such, has certain statutory rights granted to him via La.R.S. 33:2500 that he contends were not honored. Accordingly, we will address this assignment of error.

Louisiana Revised Statutes 33:2500, in pertinent part, states:

C. Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon may render such judgment and order action to be taken by the appointing authority. Such action shall be forthwith taken by the appointing authority.

D. In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor.

Louisiana Revised Statutes 33:2501, in pertinent part, states:

A. Any regular employee in the classified service who feels that he has

6

been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.

. . . .

C. (1) After the investigation . . . the board may, if the evidence is conclusive, affirm the action of the appointing authority. If the board finds that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period, a reduction in pay to the rate prevailing for the next lower class, a reduction or demotion to a position of any lower class and to the rate of pay prevailing thereof, or such other lesser punitive action that may be appropriate under the circumstances.

. . . .

E. (1) Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.

. . . .

(3) This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section.

This court, in *Tweedel v. Fire Protection District No. 1 Civil Service Board*, 546 So.2d 654, 655 (La.App. 3 Cir. 1989), stated:

"In good faith" has been interpreted to mean the opposite of arbitrary or capricious action or action that stems from prejudice or political expediency on the part of the appointing authority. "Cause" means legal

cause and the evidence must show that the dismissal was necessary for the discipline and efficiency of the service or that it was needed to avoid some detriment to that department or to the city.

Additionally, this court, in *Smith v. Mun. Fire & Police Civil Serv. Bd. of Eunice*, 94-625, p. 3 (La.App. 3 Cir. 11/2/94), 649 So.2d 566, 568 (citations omitted), stated the following:

> The appropriate standard of appellate review in appeals from civil service disciplinary actions is to determine whether the conclusion reached by the Board was arbitrary, capricious, or characterized by an abuse of discretion. The decision of the Board will not be disturbed if made in good faith and for legal cause. Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of public service. The appointing authority . . . must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficient and orderly operation of the public service.

In the case before us, the record indicates that the district court erred in affirming the decision of the Board. Neither party disputes that Jones, as a firefighter in Pineville's Fire Department, was a civil service employee. Further, neither party contests that the Mayor of Pineville, in this case Mayor Clarence Fields, was the appointing authority referenced in La.R.S. 33:2500(D). Finally, it is clear that the record contains no evidence of a written statement from Mayor Fields to Jones notifying him of his termination or the complete reasons for that termination.

In brief, Pineville requests this court to remand the case back to the Board if we address this assignment raised by Jones so that both parties would be able to submit evidence on the issue. We deny this request.

Pineville argues that this request is reasonable given that denial of the request would require it to predict and anticipate all arguments that might be raised by disciplined employees or to be ambushed on appeal via issues that were never raised

with the Board. This argument is misguided.

It is Pineville, through its Mayor, that has the burden to prove to the Board that it has complied with its affirmative statutory mandate in La.R.S. 33:2500(D). While Pineville may or may not have actually provided Jones with a written statement notifying him of his termination and reasons for such, the time for submission of such evidence has passed. The clear language of La.R.S. 33:2500(D) was readily available to Pineville, and to allow it to get a second chance to comply with the statute would be an injustice to Jones.

Louisiana's revised statutes provide an extensive, detailed procedure to be followed in the discipline of civil service employees. Louisiana Revised Statutes 33:2500(C) is clear that, "it is incumbent upon the appointing authority to initiate corrective or disciplinary action." This action, as indicated in La.R.S. 33:2500(D), is initialized by furnishing notice to the board and the employee a statement in writing of contemplated action and reasons therefor. The language in this section is clearly mandatory, i.e., "the appointing authority *shall* furnish the employee . . . a statement in writing of the action and the complete reasons therefor." La.R.S. 33:2500(D) (emphasis added.)

Louisiana Revised Statutes 33:2501(A) provides that within fifteen days of receipt of the aforesaid *written statement* the employee may request a hearing before the board. Clearly, the written notice of La.R.S. 33:2500(D) is a prerequisite to the La.R.S. 33:2501(A) request.

Thereafter, La.R.S. 33:2501(C)(1) limits the hearing before the board to determine whether the action was taken in good faith for a reasonable cause. The "action taken" must have been referred to in the written statement necessitated by

9

La.R.S. 33:2500(D). Louisiana Revised Statutes 33:2501(C)(1) further provides that the board may or may not "affirm the action of the appointing authority." Again, the action to be investigated and either upheld or reversed by the board is that described in the La.R.S. 33:2500(D) mandatory written statement.

The written statement of La.R.S. 33:2500(D) is both fundamental and sacrosanct. The written statement contains the actual disciplinary action taken by the appointing authority (in this case the employee's termination), gives notice to the employee of the action and his right to initiate further proceedings, and gives the board and employee the reasons for the action so that both can prepare for further proceedings. These reasons, and these alone, may then be considered by the board in its subsequent investigation. The employee is required to respond to the allegations, and only those allegations, included in the written statement. A review of the statutory provisions makes it clear that the entire process emanates from the parameters set in the La.R.S. 33:2500(D) written statement in much the same manner as a civil lawsuit is begun by a petition. Until this written statement is given, the employee has not been disciplined (terminated), the board has no authority to investigate, and there is nothing for the district court to review.

Accordingly, we find that the district court was clearly wrong in affirming the decision of the Board. The Board's record contains no evidence that Pineville, through Mayor Fields, complied with its affirmative duty as delineated in La.R.S. 2500(D). As such, Pineville, through Mayor Fields, was in legal bad faith when Jones did not receive a written statement of his termination and reasons therefor, and the Board's affirmation of Jones' termination without the required written statement was unreasonable, as their decision had no basis. Accordingly, pursuant to La.R.S.

10

33:2501(C)(1), we order the immediate reinstatement of Jones to his former position and award him back pay from the time of his termination to present. We find this determination just, as the record clearly establishes that Jones was never properly terminated.

**ASSIGNMENTS OF ERROR NUMBERS TWO THROUGH NINE:**

We found that the district court erred by affirming the Board's decision to uphold Jones' termination by Pineville in Assignment of Error Number One. This finding pretermits the remainder of Jones' appeal.

**DECREE:**

We found credence in Jones' first assignment of error, that Pineville, through Mayor Fields, failed to perform its affirmative statutory duty under La.R.S. 33:2500(D) to provide Jones with written notice of his termination and reasons for that termination. Accordingly, we order that Jones be immediately reinstated with an award of his regular pay retroactive to the time of his legally deficient termination. All costs of this appeal are assessed to Pineville.

**REVERSED AND RENDERED.**